No. 25-20524

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Geoffrey Polk,

*Plaintiff-Appellant*,

---v.---

AMANDA CRAWFORD, IN HER OFFICIAL CAPACITY AS THE TEXAS
INSURANCE COMMISSIONER,

*Defendant-Appellee*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CASE NO. 4:25-CV-02652

_____

REPLY BRIEF FOR PLAINTIFF-APPELLANT

_____

Geoffrey Polk
7627 Lake St. Ste 206 A34
River Forest, IL  60305
Geoff@geoffreypolk.com
312-929-3861
*Pro se*

i

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................**II**

**TABLE OF AUTHORITIES** ..........................................................................**II**

**INTRODUCTION**..........................................................................................**1**

**ARGUMENT**...................................................................................................**2**

    *I.   Polk has Article III standing.* .........................................................*2*

    *II.  The district court's failure to apply the four-factor test requires reversal*..*5*

    *III. Polk is likely to succeed on the merits.* .....................................*6*

    *IV. Polk will suffer irreparable harm.* .........................................*11*

    *V.  The balance of equities and the public interest favor Polk*......................*13*

**CONCLUSION**...............................................................................................**14**

**CERTIFICATE OF COMPLIANCE** ........................................................**15**

**CERTIFICATE OF SERVICE** ...................................................................**16**

# TABLE OF AUTHORITIES

## CASES

*Allstate Ins. Co. v. Abbott*, 495 F.3d 151 ...............................................................11

*Basicomputer Corp. v. Scott,* 973 F.2d 507………………………………………………...13

*Byrum v. Landreth*, 566 F.3d 442 ........................................3, 5, 6, 7, 8, 13

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F. 3d 922..........................................13

*Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 ......................................12

*Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925 ......................10

*Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328........................................................11

*Elrod v. Burns*, 427 U.S. 347 .................................................................4, 13

*In re Deepwater Horizon*, 739 F.3d 790....................................................................7

*In re Volkswagen of Am., Inc.*, 545 F.3d....................................................................7

*NextEra Energy Capital Holdings v. Lake*, 48 F.4th 306,......................................11

*Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 .............................7, 13

*Silver v. Garcia*, 760 F.2d 33....................................................................................9

*Supreme Court of Va. v. Friedman*, 487 U.S. 59 ......................................................9
*Supreme Ct. of N.H. v. Piper*, 470 U.S. 274 ........................................................9
*Toomer v. Witsell*, 334 U.S. 385 .......................................................................4, 9
*United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208........................9
*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,* 550 U.S. 330
......................................................................................................................11
*Walz v. Tax Comm'n of City of New York*, 397 U.S. 664 .........................................5
*Winter v. Natural Resources Defense Council, Inc*. ................................................7

## STATUTES

§ 2652.056(1) ....................................................................................................2, 14
28 U.S.C. § 1292(a)(1), ...........................................................................................1
28 U.S.C. § 1331 ......................................................................................................1
Tex. Ins. Code § 2652.051(c)(1) ........................................................................2, 14

## CONSTITUTIONAL PROVISIONS

28 U.S.C. § 1343(a) .................................................................................................1
Equal Protection Clause ..................................................................1, 2, 3, 4, 8, 12
Privileges and Immunities Clause.............................................................1, 2, 3, 8, 9

**INTRODUCTION**

The State's brief does not defend the grounds on which the district court denied relief. It does not defend the statute's age, the court's reliance on Polk's litigation conduct in other jurisdictions, or the court's refusal to reach the merits. It offers two alternative grounds for affirmance: a threshold standing argument never raised below, and a merits theory premised on the IOLTA carve-out in Section 2652.003(a).  Neither of these arguments succeeds.

Polk was denied entry to a licensed market. That market operates through title insurance agencies, direct operations, and officer appointments under Chapter 2652. An unlicensed attorney closing through his own IOLTA cannot accept agency appointments, countersign for an agency, or employ licensed officers. The State's standing theory reduces to the proposition that Polk suffers no Article III injury so long as the residual non-licensed channel remains open to him; that is not the law.

On the merits, the State asks this Court to carve escrow officers out of the common-calling doctrine because Texas closings involve Texas real estate. No Supreme Court decision applies the fundamentality inquiry transaction by transaction, and the modern title industry is interstate in structure: national underwriters, national lenders, the secondary market, and federal wire infrastructure. The adjacent-state carve-out further undermines the State's enforcement-reach

1

rationale. A statute genuinely concerned with regulatory reach would track distance or reciprocity, this one tracks neither.

Reversal is warranted.

## ARGUMENT

### I.    Polk has Article III standing.

The State's standing argument is new. It was not raised below, and the record was not developed around it. Polk does not press waiver, as standing is jurisdictional, but the posture matters. The State's reference to the district court's earlier order at ROA.107, which denied any 'immediate or emergency' relief, has no bearing on this appeal. That order disposed of an emergency-relief request Polk had not made; the preliminary injunction motion that is the subject of this appeal was decided separately, and this appeal is from that separate order. The State's theory of no-injury rests entirely on how Texas title practice operates. The State offered no evidence because it never had to. The record it now relies on establishes the opposite of what it claims: a completed license denial, issued by the named defendant, for the sole reason that Polk lives in Illinois.

### A. Exclusion from a licensed market is the injury.

The State's standing theory misreads what Polk was denied. He was denied entry into the licensed market that operates through agency appointments, countersignature authority, and the regulated channel through which title funds

move. Tex. Ins. Code §§ 2652.001, 2652.1511, 2652.003(c). The license denial forecloses that entire channel.

The Supreme Court has held for three decades that exclusion from equal competitive footing is itself the injury, independent of any claim regarding the "inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). The State cites *Northeastern Florida* for a different proposition and skips past its holding. Polk does not have to show that he would have secured any *particular* closing. He must show that Texas erected a barrier that prevents him from competing on equal terms with licensed residents. The statute does exactly that on its face. That is standing.

**B. The IOLTA carve-out does not cure the exclusion.**

The State's entire standing theory reduces to one sentence in one subsection. Section 2652.003(a) permits a Texas attorney to perform the "duties of an escrow officer" through an IOLTA account without a license. From that, the State concludes that Polk has no injury because he can already do what he seeks to do.  The State's position collapses the distinction the statute itself draws between licensed escrow officers and attorneys operating outside the regulated channel.

An attorney running closings through an IOLTA is not a licensed escrow officer and cannot function as one. He cannot accept appointment from a title insurance agent. § 2652.1511. He cannot "conduct the attorney's business in the

3

name of" a title insurance company or agent unless he is licensed. § 2652.003(c). He cannot employ licensed escrow officers under his own license. § 2652.003(b). And he cannot use a title insurance agent's escrow account, the account through which the regulated industry moves funds. § 2652.003(a). The Legislature drew a deliberate line between solo attorney closings and the licensed title industry. Put simply, Section 2652.003(a) permits limited activity outside the licensed system; it does not grant entry into the licensed market the statute regulates. The State's brief crosses that line without acknowledging it exists.

The distinction is not merely academic. The State's theory would allow a State to exclude nonresidents from a licensed profession so long as it leaves them a diminished, unregulated alternative. That is not how Article III or the Privileges and Immunities Clause operates. Standing doctrine does not require plaintiffs to accept a diminished, residual alternative carved out of the regulated market.

The State's *Clapper* citation cuts the other way. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013), held that plaintiffs cannot manufacture standing by spending money to guard against a speculative future harm. Polk's harm is neither speculative nor self-inflicted. It is a complete denial, issued by this defendant, under the statute he challenges. *Clapper* has nothing to say about that posture. To the extent the State suggests Polk should have reapplied for a license, the law does not require futile acts. The Department's denial letter cited residency as the sole reason. A

4

second application from the same Illinois address would have produced the same denial. Reapplication is not a standing prerequisite when the statute makes the applicant categorically ineligible on the face of the record.

### C. Traceability and redressability are not serious disputes.

The Department's denial letter states one reason: residency. The Commissioner enforces the residency requirement. An injunction restores Polk's eligibility and opens the licensed market to him. The State offers no contrary argument. The elements of standing are present on the face of the record.

## II. The district court's failure to apply the four-factor test requires reversal.

The State does not defend what the district court did. It does not defend reliance on the statute's age, on Polk's litigation choices in parallel cases, or on the refusal to engage the merits. It offers alternative grounds for affirmance instead. Those alternatives cannot substitute for findings the district court never made. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). The State characterizes scattered transcript references at ROA.161, 163-65, 167-68, and 170 as findings on the four-factor test. Appellee Br. 29-30. The transcript identifies no factor and makes no finding on any. A statement at ROA.170 that the court was "going to deny the motion" is not a Rule 52(a)(2) finding.

This Court should resolve the legal questions rather than remand. The underlying facts are undisputed. Polk applied for a license. The Department denied him solely because of his residency. He satisfies every other requirement. Whether the residency requirement violates the Privileges and Immunities or Equal Protection Clauses are questions of law. The affidavit was uncontested. No amount of discovery will change the statutory text, the structure of the title industry, or the geographic irrationality of the adjacent-state carve-out. Remand would accomplish nothing except delay.

### III.   Polk is likely to succeed on the merits.

#### A. The residency requirement violates the Privileges and Immunities Clause.

The State's core merits argument is to carve escrow officers out of the common-calling doctrine because they handle "purely intrastate" real estate transactions. The argument has no footing in Supreme Court precedent and no support based on contemporary business practice.

The fundamentality question looks to the occupation, not to whether the individual transaction crosses state lines. The Supreme Court has never conducted a transaction-by-transaction fundamentality test. *Piper* and *Friedman* involved lawyers whose daily practice was largely local. The Court did not ask whether the particular New Hampshire lawsuit or the particular Virginia closing reached out of

6

state. It asked whether the practice of law, as a profession, is basic to the livelihood of the Nation. *Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 281 (1985); *Sup. Ct. of Va. v. Friedman*, 487 U.S. 59, 66 (1988). The State's proposed rule, that an occupation loses common-calling status whenever its immediate subject matter sits inside one State, would carve out surgeons, engineers, accountants, and architects who work on local projects. No Supreme Court case endorses that line. The State does not attempt to reconcile its theory with the cases that would disappear under it.[1]

The factual premise fails on its own terms. Modern escrow work is interstate in every respect that matters. Title underwriting sits with national carriers. Financing runs through national lenders that sell the paper into the secondary market. Wire transfers cross federal wire infrastructure. Buyers, sellers, and lenders routinely sit in different States.

Polk himself holds non-resident title producer licenses in twenty-three States and a resident producer license in Florida. Polk Aff. ¶9, 10, ROA.76. The State offered no evidence that Texas closings are structurally different. The district court made no factual finding that they are. The State's "purely intrastate" label is an assertion without a record.

---

[1] Other federal courts have rejected materially identical residency restrictions on the same theory. *See, e.g.*, *Polk v. Wing-Heier*, No. 3:24-cv-00207-HRH (D. Alaska Apr. 28, 2025); *Polk v. Stolfi*, No. 3:24-cv-01670-IM (D. Or. May 7, 2025); *Presidential Title, LLC v. Harris*, No. 4:25-cv-00839 (E.D. Ark. Preliminary Injunction issued Dec. 12, 2025).

Other circuits have recognized insurance-adjacent fiduciary work as a protected common calling. *Silver v. Garcia*, 760 F.2d 33, 36 (1st Cir. 1985); *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 934 (9th Cir. 2008). The State tries to distinguish both cases on the ground that the plaintiffs served multi-state clients. The distinction concedes Polk's point. When the economic footprint of the occupation is interstate, fundamentality follows. Texas escrow work sits inside exactly that multi-state footprint. The State cannot both rely on that distinction and deny its application.

Once a plaintiff shows facial discrimination against nonresidents in a common calling, the State must show a substantial reason for the discrimination and that nonresidents are a peculiar source of the evil targeted. *Toomer v. Witsell*, 334 U.S. 385, 396, 398 (1948); *Piper*, 470 U.S. at 284. The State concedes it "did not offer evidence supporting the State's interest in the regional residency requirement at the preliminary injunction stage" and proposes to develop that evidence in "later discovery." Appellee Br. 6. *Piper* does not permit deferral. On the existing record, factor one of *Byrum* is satisfied, as a matter of law.

Texas's two post hoc rationales fail on the statute's own terms. Trust-account location is fixed by statute regardless of officer residency. And Texas already licenses out-of-state attorneys pro hac vice and non-resident insurance adjusters

8

without treating residency as a jurisdictional prerequisite. The State does not explain why escrow officers alone require a tool it discards elsewhere.

The State's reliance on *McBurney v. Young*, 569 U.S. 221 (2013), does not change that result. *McBurney* addressed incidental burdens. This case involves a facial residency requirement—where the Court has never required independent proof of protectionist purpose.

Virginia's FOIA was a general-purpose public-records statute that Virginia enacted to let its citizens audit their own government, and the Court treated its effect on Hurlbert's records-retrieval business as incidental to that non-protectionist aim. *Id.* at 228-29. The Court's "clear aim" and "protectionist purpose" language governed that posture, whether a state action enacted for other reasons nonetheless burdens a common calling in the way the Clause forbids.

This case is not an incidental-burden case. It is a facial residency requirement for entry into a licensed profession, the same posture as *Toomer*, *Hicklin*, *Piper*, and *Friedman*. Those cases did not require plaintiffs to develop independent evidence of legislative protectionist intent, and *McBurney* did not purport to overrule them. Even on *McBurney*'s own terms, the adjacent-state carve-out supplies the protectionist character. If Texas genuinely needed residency for enforcement reach, it would not admit residents of four specific States chosen by border contiguity. The carve-out is

9

rationally explicable only as political accommodation for border-state practitioners who would have resisted a residents-only rule.

Texas admits residents of Oklahoma, Arkansas, Louisiana, and New Mexico, and excludes every other State. If the concern were enforcement reach, the line would track distance, reciprocity, or regulatory cooperation. It tracks none of those. A Las Cruces resident, 700 miles from Houston, qualifies; a Memphis resident, 560 miles from Houston, does not.

The carve-out admits no neutral explanation. Contiguity is not a proxy for any interest the State articulates, and the State does not attempt to supply one. Its inability to explain why a Tulsa resident poses a smaller regulatory risk than a Wichita resident is itself dispositive on the protectionist-purpose inquiry *McBurney* describes.

Polk accepts that rational basis governs the Equal Protection claim. No suspect classification is at issue, and no separate fundamental right needs to be re-argued here. Even under that deferential standard, the adjacent-state rule fails. Rational basis is deference, not abdication. It requires some plausible fit between the classification and the interest the State asserts. The adjacent-state rule lacks that fit on its face.

The same defect is fatal for the state's Equal Protection argument. The classification tracks state lines and nothing else. No theory of enforcement,

10

familiarity with Texas law, or regulatory oversight predicts a pattern that admits Tucumcari and excludes Kansas City. Rational basis does not require courts to credit a fit the classification does not have.

Rational basis permits courts to hypothesize justifications the legislature did not articulate. It does not permit courts to pretend classifications track rationales they obviously do not. The Supreme Court has invalidated classifications under rational basis when the fit between means and ends collapses on inspection. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448-50 (1985). The adjacent-state rule is that kind of classification.

## IV.    Polk will suffer irreparable harm.

The State's irreparable harm argument makes two claims, neither of which are successful. First, it reads *Elrod* to apply only to First Amendment cases. The State's own authority forecloses that reading. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (*Elrod*'s irreparable-harm presumption reaches deprivations of constitutional liberty interests beyond the First Amendment). Second, it demands the kind of expert market-dynamics evidence the Federal Circuit required in a patent case. Neither move defeats preliminary relief here.

Sovereign immunity bars retrospective monetary relief against the Commissioner in her official capacity. Polk cannot recover damages for the exclusion he suffers while this case proceeds. Every day that the residency

11

requirement operates against him is a day he cannot be made whole. Harm that cannot be remedied through later damages is the textbook definition of irreparable injury. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (recognizing irreparable harm where damages remedy is unavailable). The *Elrod* presumption is one route to irreparable harm. The unavailability of damages is another. The second route is enough here even if the first is contested.

Polk's affidavit establishes two additional irreparable harms. First, his practice is national. He holds a resident title producer license in Florida and non-resident licenses in twenty-three States. Polk Aff. ¶9, 10, ROA.76. Clients retaining him for multi-state transactions cannot rely on him for the Texas transactions while the residency requirement operates, and those relationships do not pause while this litigation proceeds. Engagements lost to Texas-licensed competitors during this period do not return when a final judgment is issued. The State offered no contrary evidence and did not contest the affidavit below.

Second, the market Polk has been excluded from operates on agency appointments, referral relationships, and underwriter rosters. Positions filled during the pendency of the residency requirement are filled. Polk cannot later recover the goodwill or the place in the regulated market that exclusion costs him now.

The State's demand for expert evidence in the *Celsis* mold misreads that case. *Celsis* arose in a patent dispute where the irreparable harm theory rested on market

dynamics outside a fact finder's common experience. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). This case is a licensing exclusion. The affidavit establishes that Polk has been barred from a regulated market, has lost engagements he would have accepted, and cannot be made whole in damages. The district court made no credibility finding against the affidavit. It did not reach the affidavit at all. A party cannot demand a higher evidentiary standard on appeal than the district court applied below, particularly when the district court applied no standard at all.

### V.    The balance of equities and the public interest favor Polk.

The district court made no findings on these factors. The State now argues that enjoining the residency requirement would itself inflict irreparable harm on Texas, citing the familiar principle that a State suffers irreparable injury whenever its duly enacted statute is enjoined. *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (granting stay pending appeal of preliminary injunction). That principle presumes a valid statute. At the preliminary injunction stage, validity is the very question preliminary relief turns on. The State cannot invoke the presumption of validity to defeat the motion that tests validity. Texas has no cognizable interest in continued enforcement of an unconstitutional classification, and whether the classification is unconstitutional is what this motion asks the court to preliminarily decide.

13

Polk, by contrast, suffers concrete, ongoing exclusion from a regulated profession he is otherwise qualified to enter. He satisfies every Texas licensing requirement except the one at issue here—residency. That exclusion persists each day this case proceeds.

The public interest cuts in Polk's direction on two independent grounds. First, enforcement of constitutional guarantees is itself a public interest; the State has no cognizable interest in continued enforcement of an unconstitutional classification. Second, the Privileges and Immunities Clause exists to protect open interstate markets in licensed occupations. Derived from Article IV of the Articles of Confederation, the Clause was "intended to create a national economic union." *Piper*, 470 U.S. at 280. Texas title practice is part of that national market. The public interest favors removing that barrier while the merits are resolved, not leaving it in place by default.

An injunction would do nothing more than permit a qualified Texas-licensed attorney to compete on equal terms with qualified Texas residents. That is what the Privileges and Immunities Clause requires.

## CONCLUSION

This Court should reverse the denial of the preliminary injunction and remand with instructions to enter preliminary injunctive relief against enforcement of Texas Insurance Code sections 2652.051(c)(1) and 2652.056(1).

14

Dated:  May 1, 2026
   Chicago, Illinois                    _s/ *Geoffrey Polk*_____
                                        Geoffrey Polk
                                        *Pro se*


## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 3662 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated:  May 1, 2026
   Chicago, Illinois                    _s/ *Geoffrey Polk*_____
                                        Geoffrey Polk
                                        *Pro se*

**CERTIFICATE OF SERVICE**

I hereby certify that I e-filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on May 1, 2026.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  May 1, 2026
      Chicago, Illinois                  _s/ *Geoffrey Polk*_____

                                    Geoffrey Polk
                                    *Pro se*